Thank you, Madam Clerk. The clerk informs us that everyone who is projected to speak today, to argue today, has signed in. And there are several lawyers who will participate by Zoom, as well as Judge Calabresi, whom you can all see, I hope. You're welcome. Good. And we can hear him, and he can hear us. And we're ready to go. Let's begin with Ward against USA. May it please the Court, my name is Stephen Warshawski. I represent the plaintiff appellant, James P. Ward, in this appeal of an FTCA dismissal on a motion to dismiss. The central question in this appeal is whether the district court erred in dismissing Mr. Ward's claims for false arrest and malicious prosecution on the grounds that they were barred by the discretionary function exception under the FTCA. We submit that the answer to this question is easy and straightforward. Yes, the district court did err, and it erred because the FTCA's law enforcement proviso expressly provides for these types of claims. Now, the Supreme Court discussed the law enforcement proviso in the Milbrook case in 2013, and I think their observations about the proviso are very pertinent to this discussion. First, they said that the language of the proviso was unambiguous, and then they said that the plain language of the proviso answers when a law enforcement officer's acts or omissions may give rise to an actionable tort under the FTCA. They then go on to explain... There are things that fascinate me. I've been playing with them in torts for 100 years, but doesn't this case ultimately turn against you for a very simple reason, and that is that your client has conceded that he interfered with Mr. Bantas trying to call 9-11, and isn't that probable cause for arrest? And if it is probable cause for arrest, then doesn't that mean that in New York there is no malicious prosecution and no false arrest claim? So that all of the very difficult issues with respect to scope of employment, whether the proviso, the exception to the proviso, really in the end don't matter. Am I wrong on that? Well, Your Honor, I believe that that's incorrect, because the only act which is admitted by the plaintiff in this case is the act of putting his finger on the telephone receiver the second time Mr. Bamba went to call 9-11. I don't think that that mere act supports probable cause for any crime under New York law, certainly not the crimes for which he was prosecuted, and that's... Well, that doesn't matter in New York. If there's probable cause for an arrest, even though the prosecution then is for something else, as I understand it at large. So the question is, was what he conceded that he did, did that give probable cause for arrest? Now, I understand you're saying that that's not that obvious, and if it isn't, well, then we can go back to the very good things you were telling us about. I want to follow up on Judge Calabresi's question, because on probable cause, it's also alleged that Mr. Bamba did convey this information to, first, the New York City police, which presumably was relied upon here. So why doesn't that create the probable cause? I know you allege that Mr. Martinez said it didn't happen that way to the police. You don't allege that, actually. You allege that, but you don't allege that this officer knew any of that information. Don't you have to have a plausible allegation that there was some reason to doubt the veracity? Don't you have to have an allegation that he knew about Mr. Martinez's statement? So to the answer to that question, yes, there was information known to... or that he had said that he had a history of making false allegations. That's paragraph 29 of your complaint. You just have them saying that to the two officers, but we don't know whether or not the special agent, Familio, got that information or not. No, I think we allege in the complaint that there was an investigation, and in the course of that investigation, Officer Familio learned both the factually incorrect allegations... In the complaint, you allege that he got the NYPD file. What paragraph? Do you have rebuttal time? Don't take your time now. You can do it on rebuttal. I looked. I didn't see it, but I don't want you to waste your time doing that. Well, I will have to look at that, Your Honor, but I think that we... As Judge Bianco suggests, you can do that while we're hearing from opposing counsel. Very good. But bear it in mind and keep going. So I think, going back to Judge Calabresi's question, there are two separate issues of probable cause, even under New York law. There's both the issue of the initial arrest, but there's separate analysis under malicious prosecution. And under malicious prosecution, there has to be probable cause for the actual crimes that the person has been charged with. So even if you can say that there may have been some other uncharged crime that could support probable cause for the arrest, that doesn't answer the malicious prosecution claim. With respect to the issue of probable cause more generally, it's well established in New York law, although it's a problematic issue to actually litigate in cases, that when an officer receives information from an alleged victim or an alleged eyewitness, the veracity of which can be questioned, then it's a question whether that officer had probable cause. Now, the complaint merely has to allege facts that state a plausible claim. I think that we have stated enough facts of this situation to plausibly allege that this officer should have known that these accusations against Mr. Ward were false. This is not a summary judgment situation. This is not a trial situation. This is a situation where we've essentially stated a claim under New York false arrest law, very similar to the case that I litigated just a few years ago, and that came up on appeal more recently in the Daniel Triolo case. And there we had a situation where my client at the time had been accused by both his mother and his brother of assaulting them. But there were circumstances at the scene and derived in the immediate aftermath of the alleged altercation that caused those allegations to be brought into question. That case ultimately proceeded. We were able to develop a full record.  And on the issue of sufficiency of the evidence, this court affirmed that decision, reversing the post-trial decision to dismiss the case on qualified immunity grounds. Counsel, I'd like to go back to where you began and ask whether that is relevant to the suit against Mr. Banta. It is against the familial, yes, everything you were saying is relevant. But isn't the only issue with respect to Banta whether or not there's a scope of employment? Because no one is saying he's a corrections officer, so that the exception applies, but not the proviso, which is the exception to be accepted. That's right. For the specific claim against Mr. Banta, it only is viable if he were not acting within the scope of his employment. If he's acting within the scope of his employment, then he essentially gets immunity. And any action based on what he did, because he's not a law enforcement officer, also isn't attributable to the government. So are you arguing that this is not in the scope of employment in New York? Yes, indeed. Because I think what happened here is the district judge, initially in applying the Riviello factors, really kind of applied them in a way that didn't go to the actual issue, which is, is this something that is ordinarily done in the course of the employee's employment? And is it something that the employer can control? Counsel, you know, of course, that New York is one of the states that has the broadest scope of employment for intentional torts. Unlike Connecticut, which is a very narrow, and other states where we don't know, New York has always had a very, very broad scope of employment for intentional torts. The only question is that New York clearly did this in order to increase liability. And my question is, what happens when this very broad rule ends up blocking liability? Now, I found some cases in New York to one side, appellate divisions, that may suggest a different result. But there's nothing that the court of appeals does. Well, I agree that New York has a very broad application of scope of employment rules, which in the FTCA context has the consequence of taking a lot of these employees out of the possibility of having a private claim against them. But I think here, we don't have a situation that falls within that broad scope. We have what appears on its face, and there's no evidence in the record that contradicts this, to be a personal matter based on the private initiative of Mr. Bamba to intervene himself in a state criminal court proceeding many months after the alleged underlying incident that took place in the workplace. And I submit that it's only the nexus to the workplace that creates any nexus to the federal employment here. There's no explanation as to why Mr. Bamba got involved at all. So a fair inference is that he had a personal vendetta against Mr. Ward, and he wanted to be the one involved in carrying out this claim against Mr. Ward. Well, a personal vendetta of that type has nothing to do with his federal employment. It's not anticipated by an employer. It's not controlled by the employer. And it's nothing that he would even hypothetically be doing as a federal employee. So I do think this is one of those situations where certainly at the pleading stage, based on the information that we know, this falls outside of that scope. Thank you. And my time has expired. Thank you. Quite a long time ago, but it's fine. We appreciate hearing from you. And you've reserved three minutes. Mr. Sun? Good afternoon, Your Honors. May it please the Court. Anthony Sun from the U.S. Attorney's Office, the Southern District of New York, on behalf of the United States. Your Honors, you started out my colleague's time by asking about probable cause, and you're correct. That's dispositive. One of the charged crimes here was menacing in the fourth degree, and the New York Penal Code provides that interfering with someone who's attempting to call 911 to request law enforcement assistance meets the definition of menacing in the fourth degree. So by the allegations in the complaint, Mr. Ward's concession that he did, in fact, hang up the receiver when Mr. Bomba was attempting to dial 911, probable cause is established, and the claims fail on the merits. So you say, counsel, you say that simply on that which was conceded was not just the arrest but the prosecution, which was for a crime that was covered by the concession? Correct, Your Honor. The complaint alleges that the two criminal informations charged three separate offenses. It was menacing in the second degree, menacing in the third degree, and criminal mischief. And sorry, I misspoke. Criminal mischief in the fourth degree is the interference with the 911 call. But, Your Honor, You say we don't need to get into the question of whether the history of Bomba was before the officers or not, and any of that. You don't need to get either into how believable that was or not because it's simple without it. For the question of probable cause, yes, Your Honor. Now, certainly there's sufficient other allegations in the complaint to satisfy probable cause on the other alleged crimes. But all of them- We have said, though, for malicious prosecution purposes, if one of the crimes is more serious than the other, you could still have a malicious prosecution. But you're saying these are all of the same level of seriousness, all three of the charges? Your Honor, I'm not saying that. I'm saying that there's still sufficient factual allegations in the complaint. So for purposes of malicious prosecution, not for false arrest because one charge is enough, for purposes of malicious prosecution, we would have to look to see whether it was probable cause as to the other charges, too, right? Yes, Your Honor. They are different degrees. Okay. On that, he says that they do allege that the information that would have cast doubt on the veracity of Mr. Bamba's statement, that there was an allegation that it was supplied to Special Agent Famiglio. Is that correct or incorrect? Your Honor, I'm not aware of any allegation in the complaint that establishes that Special Agent Famiglio knew of Mr. Martinez's statement or that Mr. Bamba had a history of lying. I've gone through the complaint. I'm not aware of any such allegation. Can I ask you a question about the more interesting issue, as Judge Calabresi indicated, regarding the law enforcement proviso? The government seems to be reading that proviso in a manner that seems to be inconsistent with our language in cabin. In cabin, although that dealt with an immigration decision, we held that it was not discretionary. And in doing so, we compared it to a narcotics agent. And we said the decision of a narcotics agent as to whether there is probable cause to search, seize, or arrest raises many more competing considerations. And since the law enforcement proviso allows the government to be sued for those things, it must also allow the government to be sued for the immigration decision. So isn't what you're suggesting to us inconsistent with that? Maybe it's dicta, but analysis of the law enforcement proviso? Respectfully, Judge Bianco, I don't, for two reasons. The first is, with respect to the immigration decision at issue in Caban or Cabin, this court specifically held that that was a ministerial task, simply verifying someone's admissibility to the U.S. But with respect to the narcotics agents, looking at the history of the law enforcement proviso that was added to the FTCA in 1974, it was in response specifically to a series of highly publicized— Counsel, counsel, the proviso specifically talks about malicious prosecution. And it talks about things which in some ways are discretionary. Indeed, the very ones. So there's something rather odd about saying that one of the things which was mentioned and which is always discretionary to some extent then turns out to be too discretionary to be covered by the proviso that was put in the deal with it. Isn't that just, in terms of statutory interpretation, just bizarre? I don't think it completely guts the proviso. I think that we disagree with the reasoning and the holding of the 11th Circuit's decision and when. That's instructive. In that case, a malicious prosecution case— But without going as far as the 11th Circuit, without going as far as the 11th Circuit, isn't it the case that where what was done was discretionary only in the way that things which are specifically mentioned as covered by the proviso are always discretionary? Doesn't that cover this case? Assuming you don't win on probable cause. No, Your Honor. The discretionary function exception does not eviscerate the law enforcement proviso. In part, as we set forth in our brief, the— If a person claims that there was a lack of probable cause, false arrest, lack of probable cause to arrest me, it's the government's position in every situation that would be barred by the discretionary function provision notwithstanding the law enforcement proviso. Isn't that the government's position? If that's the allegation, as Judge Calabresi noted, that's always a discretionary decision by a police officer, you would say, I think—correct me if I'm wrong—you could never bring that claim. I don't think that's the case, Your Honor. Certainly, there's a wide spectrum. It may be that for an ordinary probable cause case, it would provide an exception. What do you mean an ordinary probable cause case? They're alleging a lack of probable cause. So why, under the law enforcement proviso, where it specifically talks about false arrest? It's a classic false arrest case. There's a lack of probable cause. I don't know where you're drawing the line. Where's the line? For example, an arbitrary arrest with no cause whatsoever as opposed to, for example— I want to make sure I get the term correct. But can you tell me honestly that that's what the proviso was put in to deal with? Only that most arbitrary of arrests? And read the whole thing of why they put in the proviso. And, you know, I know legislative history is only relevant up to a certain point, but the mischief for which a law was passed has always been relevant. And if we look at the mischief, it wasn't just the most arbitrary of arrests. Well, the example I would give is if an officer has arguable probable cause, so not actually rising to probable cause but arguable probable cause, we would submit that that would very likely fall within the discretionary function exemption. It's not wholly arbitrary, but— Isn't arguable probable cause a defense in New York? I'm sorry? Isn't arguable probable cause itself a defense? If that is what it ever is, you're out of it for whatever reason. Sir, that's on the merits, Your Honor, but this is a jurisdictional question, and it can still— No. What I'm saying is that in any case which you say would be covered by this, if there were arguable probable cause, there wouldn't be a suit anyway. So again, the proviso would have been completely useless. Your Honor, I can't say I know the full bounds of that under New York law, but again, the FDCA is a federal statute that applies to all 50 states, and so it would be perfectly— Well, and most states are even more generous with respect to giving arguable probable cause as a defense in New York. And it's hard to believe that they were passed for any—that the proviso was put in for some odd state that says, oh, well, where it's only arguable probable cause, you can bring the suit. Well, Your Honor, the purpose of the FDCA on the whole is for federal liability, and it's important for federal liability that there be, again, uniform treatment under the FDCA. The plain text of the FDCA, in particular, the law enforcement proviso as the Seventh Circuit held in Linder, the plain text says that the entirety of the FDCA applies, and that includes the other exceptions in Section 2680, including discretionary function exemption. Now, there are bounds beyond which a law enforcement officer cannot exercise discretion, such as a violation of a clearly established constitutional, statutory, or regulatory prescription. Look, I'm not saying—frankly, the Seventh Circuit, for me, is as far out in one direction as the Eleventh Circuit is in the other. I'm not saying that there might not be some things which are within the discretion, and therefore covered—not covered by the proviso, but covered by the other. That's what we said in Cabin. We took a position which happened, if I may pun, for discretionary exception, but we said there may be some. On the other hand, we suggested that the poor was covered by the proviso. And though that was dicta, isn't that middle-ground dicta really what the law of this circuit should be? Your Honor, if I may respond, I see my time is up. Your Honor, we are in the middle ground. We submit that this case on the facts alleged falls on the side of applying the discretionary function exemption. There may be cases that go beyond this. The Court need not address them here. But consistent with this Court's decision in Cabin and other case law from other circuits, the discretionary function exception is still available to law enforcement officers despite the proviso. Mr. Son, I have one question, a simple one, compared to those you've been dealing with. The decision to arrest Ward by Familio, it's your view that it involved a choice between competing policy considerations. Is that right? I'm relying now on language from Caban. Just the arrest itself, Your Honor? I'm sorry. Are you talking about just the arrest or his entire investigative conduct? Well, we're talking about the arrest. Well, Your Honor, I think the answer is yes. The decision of Familio to arrest Ward, I believe it's the government's position that it involved a choice between competing policy considerations. Is that right? Yes, Your Honor. And what public policy did Familio allegedly consider when he arrested Ward? Well, Your Honor, there's nothing alleged in the complaint, but in terms of the policies that are in play, the policies in play are to ensure workplace decorum, and this happens between federal employees at a federal site, ensure respect for the law, to ensure the proper use of investigative resources. And, again, after criminal charges are filed, it can be reasonably expected that additional federal resources will be necessary in the future prosecution, even if it's not by federal prosecutors. And what conflicts in Familio are you able to identify between policy considerations? What are the conflicts? Conflicts between those? Yes, between competing policy considerations. Well, Your Honor, I can think of a multitude, but in large part you think about any federal workplace and bringing in law enforcement to conduct an investigation, to disrupt the workplace with those investigative interviews, to arrest someone on site, those are all considerations. Again, though not alleged in the complaint, Special Agent Familio would have had to make a decision. Counsel, if I may, but aren't the policy considerations which you've just given in answer to Judge Cabranes, policy considerations which are there in every single arrest? Yes, Your Honor. Yes, in other words, then, every single arrest involves policy considerations, therefore discretion, therefore not the proviso. At that level of generality, yes, Your Honor, but there can be situations where that discretion goes beyond the panel. Thank you, Mr. Summers. Mr. Wachowski has retained three minutes. Thank you, Your Honor. Judge Bianca, I wanted to redress your question. I have looked at the complaint. I referred in the complaint several times to the investigation, but I did not connect all the dots. So one thing that I would say in that situation is when you're dealing with a pleading issue, typically at the district court level, the plaintiff will have an opportunity to replete. There's certainly not an impossibility of repleting here, because essentially all that you're asking to see in the complaint is the actual substance of the investigation report that reflects all these other allegations, the interviews and so on, that I took these facts from and state this was compiled by the officer, he met with these people, they told him these things, he was aware of this information. So I can certainly draft an amended complaint that flushes that out. It's not a situation of it being impossible to address that issue. Counsel, are you suggesting then that we should, taking your point of view, vacate and remand the district court decision because it was based, in your view, on an incorrect play about discretion, and then perhaps ask the district court to consider whether there was the kind of probable cause and whether the district court wants to grant you an amendment, a right to amend, to plead more? Or are you saying we should do that ourselves? Your Honor, I think it would be most appropriate for that to be remanded for the district court because in the event that there's going to be my request to do an amended complaint and so on and so forth, the district court would be the most efficient place for those issues to be addressed if we get past the question of jurisdiction. When you opposed their motion, they moved on the grounds that there was probable cause based upon your complaint. When you opposed their motion, did you ask to replete because you had additional allegations? Did you ask to do that in the district court? At the time, I don't believe so. I don't believe so. Okay. Unless there are any further questions, I used up most of my time previously. I do want to ask you about the law enforcement proviso. You heard the government. They're suggesting essentially, if I hear them right, and this is what they had in their brief, that we should essentially read the discretionary function provision to provide almost like a qualified immunity type standard as it relates to the law enforcement proviso. So unless there's a lack of arguable probable cause, it would fall within the discretionary function. My question to you is first, is that a proper way to read it? And if we read it that way, does that preclude your claim? No, I don't believe it's a proper way of reading the proviso. Honestly, in trying to understand what that really meant in practice and how it would apply in specific cases, I couldn't figure it out. Because if you concede basically at the beginning that ordinary law enforcement activities are exercising the kind of discretion that falls within the scope of the discretionary function exception, then you've eviscerated the law enforcement proviso. We haven't eviscerated. Under state law claims, the cases that are beyond qualified immunity proceed, and the ones that aren't don't. So there's a lot of cases that proceed even in the presence of qualified immunity. They're essentially saying if we're going to try to read these provisions together rather than just ignore the discretionary function provision, that that's where the line would be. And then you'd have to allege, in essence, a complete lack of any probable cause in order to qualify. So it certainly narrows how many cases can be brought, but it doesn't eviscerate it. Well, I guess I'm not sure I understand really how they're going to apply it. Because in a false arrest situation, the principal question is whether the office had probable cause. And that is an assessment of the totality of the circumstances. The qualified immunity analysis says, under Section 1983 typically, sometimes in Bivens cases, which are less common, it says the circumstances presenting to this particular officer are so unique or unusual that even though we think he did or may have gotten it wrong, we're not going to hold him individually liable. But the interesting thing about that is it doesn't quite make sense, because in a situation where you have liability both to an individual officer and to an employer or a corporate entity, qualified immunity doesn't excuse the violation itself. It doesn't keep the liability from going to the employer. Thank you. Thank you, Mr. Wachowski. Thank you very much. We'll reserve the decision.